IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICAH LANCE NEAL                                                PLAINTIFF

v.                              Civil No. 4:21-cv-04068

WARDEN JEFFIE WALKER;
CAPTAIN GOLDEN ADAMS;
LIEUTENANT ALICE MILLER;
SGT RICHARD HENDERSON;
NURSE STEVE KING; and
OFFICER K. WATSON                                               DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Micah Lance Neal, under 42 U.S.C. §

1983.  Plaintiff names as Defendants Warden Jeffie Walker, Captain Golden Adams, Lieutenant

Alice Miller, Sgt. Richard Henderson, Nurse Steve King, [1] and Officer K. Watson.  Plaintiff claims

all Defendants violated his constitutional rights in both their individual capacities as well as official

capacities.   Before the Court is Defendants Warden Jeffie Walker, Captain Golden Adams,

Lieutenant Alice Miller, Sgt. Richard Henderson, and Officer K. Watson Motion for Summary

Judgment.  (ECF No. 55).  Plaintiff has filed a Response (ECF No. 67).  Pursuant to the provisions

of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey Chief United States

District Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.

---

[1] Defendant Steve King filed a separate Motion for Summary Judgment which is addressed in a separate
Report and Recommendation.

## I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Corrections – North Central Unit.  His claims in this action arise from his incarceration in Miller County Detention Center ("MCDC") in 2021.  At all times relevant to the instant lawsuit, Defendants Warden Jeffie Walker, Captain Golden Adams, Lieutenant Alice Miller, Sgt. Richard Henderson, and Officer K. Watson (collectively "County Defendants") were employees of Miller County, and Plaintiff was a pre-trial detainee.[2]

Plaintiff was booked into the MCDC on August 2, 2021 under a felony warrant, possession of firearm by certain person, refusal to submit to arrest, and FTA.  (ECF No. 57-2, p. 1).  After booking, Plaintiff was placed into protective custody housing in MAX MD Cell 902.  (ECF No. 57-2, p. 3).  MAX MD is Max Delta and is a mixed-use pod used for disciplinary segregation, administrative segregation, and protective custody.  (ECF No. 57-9, p.1).  Whether Plaintiff requested this housing arrangement or Defendants assigned it to him without solicitation, is a disputed fact.  (ECF No. 67-2, p. 1).  County Defendants point to Plaintiff's Custody Log/History stating "REQUESTED SEPERATION/PC DUE TO BROTHER BEING A SGT ON THE TEXAS SIDE AND BEING AN INFORMANT FOR THE ARKANSAS SIDE."  (ECF No. 57-2, p. 4).  Plaintiff points to his booking and arrest document which list "N" in the box for "Prot Cust."  (ECF No. 57-2, p. 1).  On August 8, 2021, Plaintiff was moved to MAX ME Cell 013.  (ECF No. 57-2, p. 3).  On August 17, 2021, Plaintiff was moved to MAX ME Cell 011.  *Id.*  MAX ME is also known as Max Echo and is a single-man cell better suited for protective custody.  (ECF No. 57-9, p. 1).

On August 25, 2021, Plaintiff submitted a request number 9,634,159: "Can my kiosk be

---

[2] Plaintiff classifies himself as a pretrial detainee in his Complaint.  (ECF No. 1, p. 2).  County Defendants do not contest this classification.  (ECF Nos. 55, 56, 57).

fixed to where I'm able to read messages and view my photo please and thank you."  (ECF No. 66-2, p.4).  Sgt. R. Henderson responded on the same day: "nope you on disp."  *Id.*[3]

On August 26, 2021, Plaintiff was moved to WEST WD Cell 124.  (ECF No. 57-2, p. 3). This pod is known as West Delta and is a general population pod with dormitory style bunks reserved for inmates over fifty years of age or inmates with underlying conditions that are higher risk for COVID-19.  (ECF No. 57-9, p. 2).  Plaintiff was moved to West Delta because it is known as the "old man pod," and Defendant Adams did not believe any of these inmates in West Delta to be a threat to Plaintiff.  *Id.*  Plaintiff was instructed prior to his transfer into Max Delta that all bottom bunks were reserved for the older inmates that could not climb to the top bunk.  *Id.*  Plaintiff was further instructed not to request a bottom bunk for this reason.  *Id.*

A record of Disciplinary Committee Sanctions against Plaintiff, dated August 27, 2021, states he appeared before the Discipline Committee and received sanctions of a fifteen-day loss of commissary and kiosk privileges on August 27, 2021.  In this record, "Dis. Segregation" is not marked as a sanction administered that day.  The Record of Disciplinary Committee Sanctions is signed by Cpt. Adams and K. Watson.  (ECF No. 67-2, p. 5).  The subject matter of Plaintiff's infraction prompting the disciplinary sanctions is not included in this record.  *Id.*

Sometime after he was transferred to West Delta on August 26, 2021 and before September 1, 2021, Plaintiff requested a bottom bunk from the officer working West Delta.  (ECF No. 57-9, p. 2).  Plaintiff claims he joked with the non-party deputy working the West Delta regarding a reassignment to a bottom bunk.  (ECF No. 1, pp. 5-6).  According, to Defendant Adams, Plaintiff's

---

[3] Plaintiff references this Request in his Response to County Defendants' Motion for Summary Judgment as "Exhibit A2."  (ECF No. 66).  However, the Exhibit A2 is attached to Plaintiff's Response to Medical Defendant's Motion for Summary Judgment.  (ECF No. 67).  County Defendants had access to reference this exhibit as it is readily available on the docket, and is a document produced from the MCDC.  Therefore, the Court will rely upon it here as part of the summary judgment record.

request caused problems in West Delta, and it was decided it would be more appropriate for

Plaintiff to be transferred back to protective custody in Max Delta.  *Id*.  On September 1, 2021,

Plaintiff was moved to Max Delta.  *Id*.  From September 1, 2021 through October 5, 2021, while

housed in Max Delta, Plaintiff sent and received approximately 47 emails or instant messages and

made approximately 151 phone calls.  (ECF No. 57-4).

    Plaintiff submitted Grievance Number 9,770,385 on September 13, 2021.  (ECF No. 57-3,

p. 1).  In his grievance Plaintiff stated:

> I feel not being able to use the kiosk for my video visits [and] being held in PC in the
> 'Disciplinary Segregation POD' while other inmates that are in PC are in population in
> West D.  The deprivation of [privileges] is by law an unconstitutional punishment and a
> violation use this as a punishment according to the due process clause of the 4th
> Amendment.  . . . A restriction to my visitation [privileges] can't be used as a safety
> concern.

*Id*.  Admin G. Officer responded on September 15, 2021:

> The Disciplinary committee will review your request.  WE will consider your request upon
> completion of that review.  We will take into consideration the nature of your misconduct
> when determining whether a reduction is warranted.

*Id*.  Sgt. D. Golden responded on September 18, 2021:

> A decision was made to place you in pc, max Delta along with another pc inmate. As far
> as video visits, I'll look into why they aren't working.

*Id*.  Plaintiff then submitted an appeal on September 19, 2021:

> I committed no misconduct and was [placed] in [the] disciplinary pod because i [exercised]
> my first amendment right and asked a question.  In all due [respect] sir the video visits can
> no way possible take place at the present kiosk as it does not have a handset sir.

*Id*.  Plaintiff's Appeal was not responded to on this Grievance form.  *Id*.  Plaintiff also submitted

Grievance Number 9,770,434 on September 13, 2021, stating:

> To state that the reason for me being in PC and placed in the Disciplinary Pod for safety
> can not be [true] because I have been in West D as the others inmates in PC are there now
> and I have been punished [for] making a joke about moving bunks. . . . It is a violation of
> my civil rights and violation of both the 4th and 14th Amendments since I am a 'unconvicted

citizen' being detained for pretrial.  I only want to be treated fairly [and] visit my child.  That shouldn't be to much.

*Id.* at 2.  Admin G. Officer made a note on September 15, 2019 on this grievance:

The Disciplinary committee will review your request.  We will consider your request upon completion of that review.  We will take into consideration the nature of your misconduct when determining whether a reduction is warranted.

*Id.*  Cpt. G. Adams responded to this grievance on September 17, 2021:

You couldn't [do] the simple things asked of you.  I didn't have to go out of my way to try and find special arrangements for you…but I did…you ruined a good thing.

*Id.*  Plaintiff appealed this Grievance on September 17, 2021:

Sir I made a simple joke about moving down and you illegally punished me and [you] are still illegally and unconstitutionally punishing me.  it's a shame i can not speak to my daughter or other children because nurse king got upset about a joke an now I am being punished for no reason.  There was no misconduct in my actions.

*Id.*  Cpt. G. Adams responded to Plaintiff's appeal on this grievance on September 22, 2021:

You messed up the housing situation.  So for your safety the whole reason all of this was done.  You messed up that housing location so you went back to pc.  you can claim it was a joke if you want but it wasn't.

*Id.*  Plaintiff filed a third grievance, number 9,788,560 on September 15, 2021:

There was no disciplinary action taken and I did not go to a disciplinary trial nor receive a write up.  Therefore I have been unconstitutionally punished for 21 days.  I was also denied the due process procedure if this was a disciplinary and that is a violation of my 4th amendment right.  This can not be considered a disciplinary sentence because I can not be punished according to law, the Arkansas Jail Standards, and the Constitution both U.S. and Arkansas.  Im merely wanting to visit my child.

*Id.* at 3.  Cpt. G. Adams responded on September 22, 2021:

You are not on disciplinary you are on pc if you are having troubles getting something accomplished submit a request to a shift and they will assist you.

*Id.*  Plaintiff submitted an appeal on September 23, 2021:

You are causing me a deprivation of rights that other PC inmates are enjoying sir.  That is illegal and [a]gainst the law.

*Id.* Cpt. G. Adams responded to Plaintiff's submitted appeal on September 30, 2021:

> I gave you a way to inquire about getting help. What is it you are trying to do that other PC inmates are able to?

*Id.* Plaintiff's final grievance, number 9,788,577 was also filed on September 15, 2021:

> The statements [m]ade that the disciplinary committee has to [review] this is proof I am being both unconstitutionally and illegally punished. I am merely wanting to visit my children and I can only explain to my family because of direct violations of my rights and the illegal punishment invoked by this jail staff I can not. Please simply return me to WEST D is all I am requesting.

*Id.* at 4. ADMIN G. OFFICER entered a Note in response to Plaintiff's grievance on September 20, 2021:

> The Disciplinary committee will review your request. We will consider your request upon completion of that review. We will take into consideration the nature of your misconduct when determining whether a reduction is warranted.

*Id.* Cpt. G. Adams responded on September 22, 2021:

> Housing note says PC it says pc cause that's what it is. The committee has nothing to do with it.

*Id.* Plaintiff appealed on September 24, 2021:

> The response from grievance officer used the term disciplinary committee. i also have requested to be off of PC numerous times. I am not aware of any rule where I am not allowed to ask to be off PC. Also how can it be for my safety when I am mixed with general population inmates daily, and not treated as a PC inmate. The deprivation of rights is ALL I am requesting to be stopped and I have been placed in a disciplinary pod for 30 days unconstitutionally punished withouyt (sic) the procedural due process protected by my 14th amendment sir. I am speaking to you in all due respect and humbley (sic) man to man. Whats happening to me is wrong sir. My children cant see m[e] because of the cruel and unusual punishment being invoked sir. ALL I want is a fair shake and the order of guidelines and procedures were never explained to me via rules. The 12 page handbook is out of date by 4 years and Im still maintain my respet (sic) for your position as Captain of the jail. Im asking you for a chance sir. I feel everyone deserves a second chance especiall (sic) when they take accountability for their actions and address the correct ac[t]ion. I assure you it wont be a mistake if you return me to West D sir.

*Id.* Cpt. G. Adams responded on September 30, 2021:

> Not once have you told me you wanted off PC all together.  You hit the door wanting PC.
> I will take your request at going back to WD into consideration even though it's a grievance
> is which it was submitted.

*Id.*  Plaintiff was transferred out of Max Delta on October 5, 2021 back to West Delta.  (ECF
No. 57-2, p. 3).

## II. PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on October 14, 2021.  (ECF No. 1).  County Defendants

Answered on November 17, 2021 (ECF No. 16).  In his Complaint, Plaintiff asserts five claims.

First, Plaintiff claims Defendants Jeffie Walker, Alice Weaver, Golden Adams, and Kathy Watson

punished him unconstitutionally, and deprived him of privileges by placing him in maximum

security disciplinary segregation on August 25, 2021 without a disciplinary hearing.  Plaintiff

claims these actions denied him his due process.  (ECF No. 1, pp. 5-6).  Plaintiff specifically

claims:

> Placed in a maximum security disciplinary segregation pod/cell on August 25, 2021 at
> 11:50 a.m. by jail nurse Steve King, for asking in a joking manner via a guard if I could
> move to a bottom bunk.  Immediately I was unconstitutionally punished.  Deprived of
> visitation via video kiosk with family members.  Told by Nurse King, Captain Adams,
> Grivenence (sic) Officer Watson my aking (sic) a question was misconduct.  Was given no
> disciplinary hearing, d, denied due process, and locked down in A 23/1 lockdown, placed
> on PC by Srgt. Henderson.  Filed numerous request and grievances and still denied being
> returned to West D Pod with PC inmates housed with other general population inmates.  I
> have suffered severe mental and emotional harm not limited stress, heartache, chest pains,
> anxiety, physical pain and suffering.

(ECF No.1, pp. 5-6).  Plaintiff alleges Claim One against these Defendant in both their individual

and official capacities.  He states:

> The detainee handbook is 12 pages and 4 years outdated.  The violations of Arkansas Jail
> Standards Section 15.1005 and A.C.A. Section 12-26-104 no general knowledge or respect
> for inmates 4th and 14th Amendment rights.

*Id.*

Next, Plaintiff's Claim Two is alleged against Defendants Officer Watson, Captain Adams, Warden Walker, and Allice Miller.[4]  Plaintiff claims these Defendants violated his Fourth Amendment due process rights, and Fourteenth Amendment rights by using segregation as discipline and deprivation of rights without procedural due process.  Plaintiff specifically claims:

> Told by grievance officer Watson in Grievance #9,770,434 that my 'misconduct' was being reviewed by disciplinary review committee.  I appealed stating I was given no verbal or written disciplinary form or hearing.  Captain Adams, Warden Walker, Lieutinant Weaver reviewed original grievance and appeal.  Captain Adams stated he made 'special arrangements to house me' and 'ruined a good thing.'  I stated I didn't know asking a question was considered 'misconduct.'  I asked in an appeal to said grievance about being placed in disciplinary segregation Max Pod D Cell 901 and Captain Adams responded that again 'I knew what was at stake.'  I was/am being punished without any disciplinary hearing and have had my right of procedural due process violated per the actions and disregard of my 14th Amendment Due Process Clause.

(ECF No. 1, pp.7-8).  Plaintiff alleges Claim Two against these Defendants in their individual capacity only.  *Id.* at 9.

For his Claim Three Plaintiff alleges Defendant Adams violated his First Amendment right to free speech by retaliating against him when jokingly requested a bottom bunk.  Specifically, Plaintiff claims:

> On 8/24/2021 I requested in a joking manner verbally to correctional officer Dockery 'if I could move to a bottom bunk.'  C.O. Dockery spoke with Nurse King and shortly after Nurse King returned to Pod West D and verbally beratted (sic) and belittled me for 'asking to move down.'  He then returned to verbally discipline me stating 'I had no right to ask that question.'  Nurse King then stated I would be moving back to lockdown because of exercising my freedom of speech.  Captain Adams backed his choice to violate my First Amendment right and moved me to disciplinary pod on 8/25/2021.

> *Id.* at 8-9.  Plaintiff asserts Claim Three against Defendant Adams in his individual capacity only.  *Id.*

---

[4] Plaintiff's Complaint list Lieutenant Weaver as a Defendant, however, Lieutenant Weaver is the same person as Defendant Alice Miller.  (ECF No. 29).

Plaintiff's Claim Four is asserted against Defendants Walker and Adams.  Plaintiff claims these Defendants violated his equal protection rights under the Fourteenth Amendment and his right to be free from cruel and unusual punishment.:

> Warden Jeffie Walker has allowed Captain Adams, and Nurse King the opportunity to punish me in cruel and unusual was.  Both Adams and King are fully aware the kiosk in Disciplinary Pod Max D is not set up for video visitation as all other pods are.  Also the lockdown pod Max D is 23 hour lockdown and 1 hour recreation everyday.  Tjus (sic) making access to communications to attorneys, family members, and bondsman very limited.  Also the access to a law library and medical requests or grievance filing via kiosk as well.  Privileges deprived from this 23/1 lockdown situation is causing cruel and unusual punishment.

(ECF No. 1, p. 11).  Plaintiff asserts Claim Four against these Defendants in their individual capacity only.  *Id.*

Plaintiff's fifth and final claim is that Defendants Walker and Adams violated his Eighth Amendment rights by failing to discipline jail nurse Steve King.  Specifically, Plaintiff states:

> Warden Jeffie Warren (sic) is aware of all complaints/filed grievances in this matter, as the warden has been included in sent request and is part of said 'review committee.'  Mrs. Walker has allowed Captain Adams and Nurse King to continually and knowingly violate numerous federal constitutionally statutory rights with no recourse or discipline for their illegal actions.  The unconstitutional punishment is allowed to be carried out daily and no disciplinary actions are taken against these two individuals.

(ECF No. 1, p. 12).  Plaintiff asserts Claim Five against Defendant Walker and Adams in their individual capacity only.  *Id.*

For relief Plaintiff requests compensatory damages in the amount of $250,000.00 for the "extreme physical, emotional, and emotional trauma caused by the direct actions of the named defendants."  *Id.* at p. 13.

County Defendants filed a joint Motion for Summary Judgment, Memorandum Brief in Support, and Statement of Undisputed Facts on August 9, 2022.  (ECF Nos. 55, 56, 57).  In their Brief, County Defendants argue: (1) there is no proof of personal involvement in Plaintiff's complaints of Defendants Walker, Miller, Watson, or Henderson; (2) County Defendants did not

retaliate against Plaintiff for exercising his constitutional right of free speech; (3) County Defendants did not deny Plaintiff due process of law; (4) County Defendants are entitled to qualified immunity; and (5) there is no unconstitutional policy implemented by County Defendants that violated Plaintiff's rights, and therefore no basis for official capacity/county liability. (ECF No. 56).

Plaintiff responded on September 27, 2022. (ECF No. 67). In his Response, Plaintiff objects to County Defendant's Motion arguing there is proof of personal involvement by all County Defendants; Plaintiff was retaliated against for exercising his constitutional rights of free speech; County Defendants did deny Plaintiff due process of law; and an unconstitutional policy was implemented by County Defendants that violated Plaintiff's rights. *Id.* Plaintiff supports his Response arguments with specific references to the record. (ECF No. 67-1). Finally, Plaintiff submitted disputes to County Defendants Statement of Undisputed Facts. (ECF No. 67-2). The Court will highlight Plaintiff's disputed facts which are material in the legal analysis below.

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607.  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities.  The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity.  *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted).  "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.*  Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.*  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

## IV.  DISCUSSION

As an initial matter, Defendants Walker, Miller, Henderson, and Watson argue they cannot be held liable for actions of which they were not personally involved, and they assert qualified immunity.

### A.  *Respondeat superior*

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution.  *West v. Atkins,* 487 U.S. 42 (1988); *Dunham v. Wadley,* 195 F.3d 1007, 1009 (8th Cir.1999).  The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under Section 1983.  *Daniels v. Williams,* 474 U.S. 327 (1986); *Davidson v. Cannon,* 474 U.S. 344 (1986).

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell v. Department of Social Servs,* 436 U.S. 654, 694 (1978).  "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."  *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994); *see also Whitson v. Stone County Jail,* 602 F.3d 920, 928 (8th Cir.2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); *Keeper v. King,*130 F.3d 1309, 1314 (8th Cir.1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir.2007) (*quoting Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir.2006)).

First, Plaintiff argues Defendant Henderson was directly involved in his complained of actions because Defendant Henderson responded to Plaintiff's August 25, 2021 request for kiosk repair with the comment "nope you on disp."  (ECF No. 66-2, p. 4).  The Court agrees.  Plaintiff specifically complains of discipline without due process and the deprivation of video visitations with his children through the use of the kiosk system.  Accordingly, this record is sufficient to present a genuine issue of material fact as to whether Defendant Henderson was involved in the alleged deprivations.

Second, Plaintiff argues his Exhibit A3, demonstrates Defendants Miller and Watson's direct involvement in his complained of actions.  (ECF No. 67-2, p. 5).  The Court agrees regarding Defendant Watson.  This Disciplinary Committee Sanctions record is from K. Watson and is also signed by K. Watson as "Disciplinary Committee Chairman."  The Court is unable to determine from the summary judgment record whether this disciplinary record is related to Plaintiff's claimed deprivations.  It does fall within the time-period at issue here and includes the named Defendants Adams and Watson.  Further, Defendants did not allege any facts regarding this record.  Accordingly, this record is sufficient to present a genuine issue of material fact as to whether Defendant Watson was involved in the alleged deprivations.

However, Defendant Miller is not indicated on the referenced disciplinary record in any way.  (ECF No. 67-2, p. 5).  Defendant Miller submitted a sworn affidavit stating she did not have

any contact with Plaintiff and was not personally involved in any of his alleged deprivations. (ECF No. 57-6). Further, the Court cannot find any documents on the summary judgment record contradicting Defendant Miller's Affidavit. Plaintiff argues that each Defendant was aware of his complaints per their "job scope and description." This argument is unconvincing. The burden is not that the Defendants should have known of Plaintiff's complaints because it was their job to know, but instead Plaintiff must point to specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights. *See Clemmons,,* 477 F.3d at 967. Accordingly, there are no issues of fact as to Defendant Miller's lack of personal involvement in Plaintiff's claimed deprivations, and she should be dismissed.

Finally, Plaintiff argues Defendant Walker was aware of his complaints and personally involved as evidenced by Grievance Number 9,770,385. (ECF No. 57-3, p. 1). After reviewing this grievance, the Court determines Plaintiff's reliance is misplaced because the grievance was "Assigned to: Walker J. (Warden)." *Id.* However, the status of the grievance reads: "reassigned," and "Sgt D. Golden" responded to the grievance. *Id.* Plaintiff also argues in his Response that Defendant Miller's response to Interrogatory #24 "states the grievance officer notifies Warden Walker of civil right violation complaints by inmates." (ECF No. 67-1, p. 2). However, Plaintiff did not attach this interrogatory response or point the court to any document on the record containing this interrogatory response. Again, Plaintiff also argues Defendant Walker should have known of his complaints given her job scope and the policy and procedure of the MCDC regarding complaints. MCDC Policy and Procedure SOP 09-.01, Inmate Rights, Complaints & Grievances does state in pertinent part that the "Jail Warden or designee" is responsible for the coordination and management of the grievance procedures. (ECF No. 57-5, p. 23). The policy goes on to state

grievances and investigations related to grievances "shall be routed to the Warden or Risk Management Officer . . ." *Id.* at 24.

Defendant Walker submitted an Affidavit on the record stating she never had contact with Plaintiff regarding his complaints, she was not personally involved with transferring Plaintiff from West Delta, or disciplining Plaintiff in any way, she did not review or respond to any of Plaintiff's grievances at issue here, and she was unaware of Plaintiff's allegations until he filed the instant lawsuit.  (ECF No. 57-1, pp. 1-2).

As noted above a job scope or policy cannot met the burden of pointing to summary judgment evidence showing specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *See Clemmons,,* 477 F.3d at 967.  Further, the policy cited by Plaintiff, specifically states the warden *or her assignee or the Risk Management Officer* will coordinate and review grievances.  Even if the Court assumed the policy was followed, an assignee or the Risk Manager may have been the individual that handled Plaintiff's grievances.  Further, the grievance cited by Plaintiff does not indicate Defendant Walker reviewed it or responded to it.  Defendant Walker cannot be held liable based on a theory of *respondeat superior* and no facts showing actual involvement, knowledge, or a causal link have been shown on the summary judgment record.  Therefore, Plaintiff's Claims One, Two, and Four against Defendant Walker should be dismissed for failure to state a cognizable claim.  Plaintiff's Claim 5 against Defendant Walker will be addressed separately below.

### A.  Qualified immunity

County Defendants assert they are entitled to qualified immunity.  Qualified immunity "shields [a] government official from liability in a section 1983 action unless the official's conduct violates a clearly established right of which a reasonable person would have known."  *Brown v.*

*City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: (1) the facts viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation."  *Watson v. Boyd,* 2 F.4th 1106, 1109 (8th Cir. 2021) (internal citation and quotations omitted).  The Court will first determine, viewing the facts in the light most favorable to Plaintiff, whether Plaintiff demonstrated the deprivation of a constitutional or statutory right.

### 1.  Claim One and Two – Violation of Due Process

Plaintiff claims his Due Process rights under the Fourteenth Amendment were violated when he was transferred to the Max Delta Pod on September 1, 2021 as punishment for requesting a bottom bunk while held in the West Delta pod.  Defendants allege this transfer was not a punishment, but a return to protective custody in Max Delta.  Plaintiff asserts his Claim One and Two against Defendants Walker, Miller, Adams, and Watson.[5]

It is well settled that Defendants may not punish Plaintiff, a pre-trial detainee, without first providing him due process. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Pretrial detainees are presumed innocent and cannot be punished for the crime for which they have been charged.  *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979).  "[T]he effective management of the detention facility once the individual is confined is a valid objective that may justify the imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as

---

[5] Plaintiff argues in both Claim One and Two that he was improperly punished and his due process rights violated.  Therefore, the Court will analyze these claims together.

punishment." *Id.* at 540.  Conditions or restrictions that are "reasonably related to a legitimate governmental objective" such as institutional order and security do not amount to punishment. *Id.* at 539-40; *see also Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992) ("We do not quarrel with the prison's need to segregate individual inmates from the general prison population for non-punitive reasons; for example ... where there is a threat to the safety and security of the institution").  If the conditions or restrictions are deemed punishment, the pretrial detainee is entitled to due process.  When a detainee "is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand." *Id.*  In *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974), the Supreme Court held that pretrial detainees are entitled to an impartial due process hearing on disciplinary matters. *See also Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008).  These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id.*; *see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

The undisputed facts indicate Plaintiff was booked into the MCDC and immediately placed in protective custody in a segregation pod MAX MD Cell 902.  Plaintiff was moved to West Delta on August 26, 2021 according to the MCDC Housing record.  West Delta is the "old man pod" reserved for older inmates or those that are more susceptible to COVID-19.  West Delta is a general population pod with open barrack style bunks.  Plaintiff was instructed before he was transferred into West Delta that the bottom bunks in West Delta were reserved for the older or infirm inmates, and he was not to request a reassignment to one of the lower bunks.  Approximately five days after transferring into West Delta, Plaintiff requested a bottom bunk from the non-party officer working

the pod.  Plaintiff alleges he made this request "jokingly."  Plaintiff was transferred out of West Delta and into Max Delta on September 1, 2021 for making this requests this request in contravention to the instructions he was given.  Max Delta is a mixed-use pod for disciplinary segregation, administrative segregation, and protective custody.  (ECF No. 57, p. 9).  Plaintiff was transferred out of segregation and back to West Delta on October 5, 2021.  *Id.*

Defendants argue Plaintiff's transfer to Max Delta on September 1, 2021 was not punishment, but instead based on the needs of the MCDC.  *Id.*  Specifically, Defendant Adams states in his Affidavit the decision to transfer Plaintiff back to a segregation pod was based on Plaintiff attempting to cause problems within the pod and ignoring MCDC personnel's instructions.  Accordingly, it was decided it would be appropriate to place Plaintiff back in protective custody in Max Delta.  *Id.*

If Plaintiff's transfer and housing in Max Delta is "reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.  *Bell*, 441 U.S. at 539. However, there are disputed facts related to Plaintiff's transfer that the Court finds material. Defendants allege Plaintiff requested protective custody in a segregation pod upon booking. Plaintiff's housing sheet supports this assertion.  (ECF No. 57-2, p. 4).  However, Plaintiff asserts he never requested protective custody and points to his booking sheet which states he is not in protective custody.  (ECF No. 57-2, p. 1).  This is material because Defendants allege their legitimate governmental objective was to keep Plaintiff safe in protected custody, not to punish him.

Additionally, it is unclear to the Court whether Plaintiff received a disciplinary action or hearing related to his bunk requests in West Delta.  Defendants assert there was no punishment so no need for disciplinary action or hearing.  While Plaintiff alleges there was no hearing, he

maintains he was being disciplined.  In support of this contention, Plaintiff attaches a Record of Disciplinary Committee Sanctions to his Response.  (ECF No. 67-2, p. 5).  This Record is dated August 27, 2021, and states Plaintiff appeared before the disciplinary committee on that date.  The sanctions imposed on Plaintiff were: (1) loss of commissary for 15 days; and (2) loss of kiosk use for 15 days.  *Id.*  Segregation is not indicated on this Record.  *Id.*  This Record was signed by Defendant Adams and Defendant Watson.  *Id.*  However, there is no indication as to the subject matter of this disciplinary action, or whether it was related to Plaintiff's actions in West Delta.  Plaintiff uses this document to dispute Defendants' Statements of Facts that he was transferred to Max Delta for protective custody instead of punishment.

Additionally, Plaintiff also submitted a document titled "3rd Shift Sgt. - #9,634,159."  (ECF No. 66-2, p. 4).[6]  This request was made on August 25, 2021, and Sgt. R. Henderson replied on the same day.  *Id.*  Plaintiff requested: "Can my kiosk be fixed to where I'm able to read messages and view my photos please and thank you."  *Id.*  Sgt. R. Henderson responded: "nope you on disp." *Id.*  The date of this request is the same date listed as Plaintiff's transfer to West Delta.  This strikes the Court as odd, however, it nevertheless is an additional piece of summary judgment evidence creating an issue of fact as to whether Plaintiff was disciplined.

Further, on three of Plaintiff's grievance forms from September in which he complains of his housing transfer to Max Delta, the initial response on all three grievances is:

> The Disciplinary committee will review your request.  We will consider your request upon completion of that review.  We will take into consideration the nature of your misconduct when determining whether a reduction is warranted.

---

[6] Plaintiff submitted this document attached to his Response to Defendant King's Motion for Summary Judgment.  (ECF No. 66).  However, he references it in his Response to County Defendants' Motion, and it is readily available to County Defendants on the record.

(ECF No. 57-3, pp. 1, 2, 4).   However, on one of Plaintiff's September 15, 2021 Grievances, Defendant Adams responds "You are not on disciplinary you are on pc . . ."  *Id.* at 3.  Finally, on the same grievances, Plaintiff himself complains he did not receive a "disciplinary trial."  *Id.*

Accordingly, the Court finds there are genuine issues of material fact as to whether Plaintiff's transfer to the Max Delta segregation pod was for punishment purposes, and if it was punishment, if Plaintiff was afforded proper due process through notice and a hearing.[7]

As Defendants have claimed qualified immunity, the Court must now determine whether Plaintiff's due process rights were clearly established in September and October of 2021. *Watson,* 2 F.4th at 1109.  The question being whether the facts, in a light most favorable to Plaintiff, and the binding legal precedent at the time of the challenged action, entitled County Defendants to qualified immunity.  As the Court has already stated, there are issues of fact as to whether Plaintiff's transfer was punitive in nature, and whether Plaintiff received notice and a disciplinary hearing prior to that punishment.  Accordingly, considering the facts as alleged by Plaintiff, that he was transferred into Max Delta as punishment for his requests, County Defendants are not entitled to qualified immunity.  The precedent was clear in 2021 that a pretrial detainee is entitled to, at a minimum, notice and a hearing prior to a punitive transfer into a segregation unit where he will be deprived of privileges afforded the general population.  *See e.g. Matlock v. Hickman,* 3:15-cv-03083, 2016 WL 4425730, at *6-8 (W.D. Ark. July 21, 2016) (while there may have been legitimate reasons for defendants to place plaintiff on administrative segregation without notice

---

[7] Defendants argue the Court should apply a two step process first determining if Plaintiff holds a protected liberty or property interest and then determining whether the state provided sufficient due process prior to depriving that individual of the protected interest.  This analysis would be proper if Plaintiff were a convicted inmate.  *See e.g., Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989); *Phillips v. Norris,* 320 F.3d 844 (2003); *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002)  County Defendants did not contest Plaintiff's classification as a pretrial detainee.

and a hearing, if the reasons are not clear from the record, defendants are not entitled to summary judgment); *Hastings v. Oxner,* No. 2:12CV00212-SWW, 2014 WL 546815, at *7 (E.D. Ark. Feb. 10, 2014) (a pretrial detainee retains a protected liberty interest in a disciplinary hearing and must not prove an atypical condition of confinement); *Hart v. Beasley*, No. 3:10CV00015 BD, 2011 WL 39134, at *1 (E.D. Ark. Jan. 6, 2011) (as a pretrial detainee, plaintiff was entitled to some sort of disciplinary hearing prior to placement in lock-down for 72 hours).

Therefore, questions of material fact exist and Plaintiff's Claims One and Two against Defendants Captain Golden Adams, Sgt. Richard Henderson and Ofc. K. Watson should proceed.

### 2.  Claim Three – Retaliation

Plaintiff claims Defendant Adams violated his rights under the First Amendment by punishing him for exercising his "Freedom of Speech."  (ECF No. 1, p. 9).  The Court interprets this as a retaliation claim against Defendant Adams.

Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)).  The retaliatory conduct itself need not be a constitutional violation to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved.  *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994). To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action. *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

First, the Court must determine if there are any genuine issue of material fact as to whether Plaintiff was engaging in protected activity when he says he jokingly requested a bottom bunk. Although the First Amendment provides for free speech, "the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). "A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correction's system." *Id.* (quoting *Pell v. Procunier*, 417 U.S. 817 (1974)).

In *Goff v. Dailey*, 991 F.2d 1437, 1439 (8th Cir. 1993), the Eighth Circuit held discipline of an inmate based on crude language spoken to other inmates about a guard did not violate First Amendment free speech rights. The Court determined the prison had a legitimate penological interest in punishing inmates for mocking and challenging correctional officers by making crude personal statements about them in a recreation room full of other inmates. The Court ruled Goff was not deprived of his First Amendment rights when the disciplinary committee found he violated the rule against verbal abuse. *Id.*

Here, Plaintiff argues he was punished for requesting a specific bunk assignment. Plaintiff has no constitutional right to a particular housing or bunk assignment. *See Allen v. Purkett,* 5 F.3d 1151, 1153 (8th Cir. 1993). Accordingly, in accordance with *Jones,* the Court finds Plaintiff's request or joke regarding his bunk assignment is not protected speech as he has no constitutional right to a particular housing or bunk assignment, and the MCDC has a legitimate penological interest in assigning inmates to particular bunks, especially infirm inmates with particular medical needs as those in Max Delta. Accordingly, Plaintiff has failed to show summary judgment evidence for the first element of his retaliation claim, and thus his claim fails as a matter of law.

Assuming, *arguendo*, the Court found Plaintiff stated a valid retaliation claim, County Defendants would still be entitled to qualified immunity. After an exhaustive search, the Court was unable to find any binding or persuasive precedent to clearly establish a right of protected speech related to a detainee's bunk assignment.

Accordingly, Defendant Adams is entitled to qualified immunity on Plaintiff's Claim Three of retaliation.

### 3.  Claim Four – Equal Protection and Cruel and Unusual Punishment

Plaintiff claims Defendant Walker and Adams violated his Fourteenth Amendment rights, subjected him to cruel and unusual punishment, and denied his equal protection rights when they deprived him of access to a kiosk so he could have video visitation with his family. (ECF No. 9). County Defendants did not move for summary judgment on this claim regarding Defendant Adams.[8] (ECF Nos. 55, 56, 57). Accordingly, it should proceed.

### 4.  Claim Five – Failure to Discipline

Plaintiff claims Defendants Walker, Adams, and King all violated his constitutional rights continuously and Defendant Walker is aware of these violations through the grievance procedure but took no action to discipline Defendants Adams and King. Plaintiff claims this inaction by Defendant Walker violates his Eighth Amendment rights. The Court is unsure what deprivation of constitutional rights Plaintiff is asserting here. However, County Defendants assertion that Defendant Walker cannot be held liable without personal involvement and a causal link to the alleged deprivation will address any claim Plaintiff is attempting to allege in Claim Five.

---

[8] Defendants argued that all claims against Defendant Walker failed as they were based on a theory of *respondeat superior*.

As explained above, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability.  *See Monell v. Department of Social Servs,* 436 U.S. 654, 694 (1978).  Defendant Walker is not vicariously liable under 42 U.S.C. § 1983 for Defendant Adams and King's unconstitutional activity."  *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994); *see also Whitson v. Stone County Jail,* 602 F.3d 920, 928 (8th Cir.2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); *Keeper v. King,*130 F.3d 1309, 1314 (8th Cir.1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

Plaintiff has pointed to no summary judgment evidence showing Defendant Walker was aware of any of his complaints or Defendant Walker or King's actions.  Accordingly, he has failed to state cognizable Claim Five.

### 5.  Official Capacity Claims

Plaintiff only asserts official capacity claims against Defendants Walker, Miller, Adams, and Watson regarding his due process violation claim (Claims 1 and 2).  Plaintiff specifically alleges the Detainee handbook is only 12 pages long and 4 years outdated; the MCDC policies violate the Arkansas Jail Standards Section 15-1005 and A.C.A. Section 12-26-104, and the policies or customs violate inmates Fourth and Fourteenth Amendment rights.  (ECF No. 1, p. 6). He does not however, make any allegations or explanations of how the handbook, and MCDC policies or customs caused his alleged due process violations.

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity."  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  In

this case, Plaintiff's official capacity claim against Defendants is treated as a claim against Miller County.  *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under Section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Here, this means Plaintiff must produce summary judgment evidence to show a policy or custom of Miller County contributed to his due process violations.  Plaintiff has not pointed to any such policy or custom on the record.  Accordingly, Plaintiff's claims against Defendants in their official capacity must fail as a matter of law.

### V. CONCLUSION

For the reasons stated above, I recommend the County Defendants' Motion for Summary Judgment (ECF No. 55) be **GRANTED in part** and **DENIED in part**.  Specifically, I recommend:

(1) all claims against Defendants Warden Jeffie Walker and Lieutenant Alice Miller be **DISMISSED WITH PREJUDICE;**

(2) Plaintiff's retaliation Claim Three be **DISMISSED WITH PREJUDICE**;

(3) Plaintiff's official capacity claims against all Defendants be **DISMISSED WITH PREJUDICE**; and

(4) Plaintiff failure to discipline Claim Five be **DISMISSED WITH PREJUDICE**.

This leaves (1) Plaintiff's Claims One and Two, violation of due process, against Defendants Captain Golden Adams, Sgt. Richard Henderson and Ofc. K. Watson; and (2) Plaintiff's Claim Four against Defendant Captain Golden Adams to proceed for trial.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 1st day of February 2023.

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE