[1]IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICAH LANCE NEAL                                                                PLAINTIFF

v.                                        Civil No. 4:21-cv-04068

WARDEN JEFFIE WALKER;
CAPTAIN GOLDEN ADAMS;
LIEUTENANT ALICE MILLER;
SGT RICHARD HENDERSON;
NURSE STEVE KING; and
OFFICER K. WATSON                                                               DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Micah Lance Neal, under 42 U.S.C. § 1983. Plaintiff names as Defendants Warden Jeffie Walker, Captain Golden Adams, Lieutenant Alice Miller, Sgt. Richard Henderson, Nurse Steve King, and Officer K. Watson. Plaintiff claims all Defendants violated his constitutional rights in both their individual capacities as well as official capacities. Before the Court is Defendant Steve King's Motion for Summary Judgment. (ECF No. 59). Plaintiff has filed a Response (ECF Nos. 66). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

---

[1] Defendants Warden Jeffie Walker, Captain Golden Adams, Lieutenant Alice Miller, Sgt. Richard Henderson, and Officer K. Watson ("County Defendants") filed a separate Motion for Summary Judgment (ECF No. 55), and the Court addressed it by separate Report.

## I.     FACTUAL BACKGROUND

The summary judgment factual record is well developed by County Defendants in their supporting documents on Summary Judgment. (ECF No. 57). For this reason, the Court will rely upon those records herein as well as the summary judgment evidence presented in the instant Motion and Response.[2]

Plaintiff is currently incarcerated in the Arkansas Department of Corrections – North Central Unit. His claims in this action arise from his incarceration in Miller County Detention Center ("MCDC") in 2021. At all times relevant to the instant lawsuit, Defendant Steve King was medical staff employed with Southern Health Partners ("SHP") the company that provides medical services to the MCDC, and Plaintiff was a pre-trial detainee.

Plaintiff was booked into the MCDC on August 2, 2021 under a felony warrant, possession of firearm by certain person, refusal to submit to arrest, and FTA. (ECF No. 57-2, p. 1). After booking, Plaintiff was placed into protective custody housing in MAX MD Cell 902. (ECF No. 57-2, p. 3). MAX MD is Max Delta and is a mixed-use pod used for disciplinary segregation, administrative segregation, and protective custody. (ECF No. 57-9, p.1). Whether Plaintiff requested this housing arrangement or County Defendants assigned it to him without solicitation, is a disputed fact. (ECF No. 67-2, p. 1). County Defendants point to Plaintiff's Custody Log/History stating "REQUESTED SEPERATION/PC DUE TO BROTHER BEING A SGT ON THE TEXAS SIDE AND BEING AN INFORMANT FOR THE ARKANSAS SIDE." (ECF No. 57-2, p. 4). Plaintiff points to his booking and arrest document which list "N" in the box for "Prot Cust." (ECF No. 57-2, p. 1). On August 8, 2021, Plaintiff was moved to MAX ME Cell 013.

---

[2] Defendant King provided very little supporting documentation for his Motion for Summary Judgment producing only a sworn affidavit of Defendant King, and Plaintiff's Arrest-Booking Detail page. (ECF No. 59).

(ECF No. 57-2, p. 3). On August 17, 2021, Plaintiff was moved to MAX ME Cell 011. *Id.* MAX ME is also known as Max Echo and is a single-man cell better suited for protective custody. (ECF No. 57-9, p. 1).

On August 25, 2021, Plaintiff submitted a request number 9,634,159: "Can my kiosk be fixed to where I'm able to read messages and view my photo please and thank you." (ECF No. 66-2, p.4). Sgt. R. Henderson responded on the same day: "nope you on disp." *Id.*

On August 26, 2021, Plaintiff was moved to WEST WD Cell 124. (ECF No. 57-2, p. 3). This pod is known as West Delta and is a general population pod with dormitory style bunks reserved for inmates over fifty years of age or inmates with underlying conditions that are higher risk for COVID-19. (ECF No. 57-9, p. 2). Plaintiff was moved to West Delta because it is known as the "old man pod," and Defendant Adams did not believe any of these inmates in West Delta to be a threat to Plaintiff. *Id.* Plaintiff was instructed prior to his transfer into Max Delta that all bottom bunks were reserved for the older inmates that could not climb to the top bunk. *Id.* Plaintiff was further instructed not to request a bottom bunk for this reason. *Id.*

A record of Disciplinary Committee Sanctions against Plaintiff, dated August 27, 2021, states he appeared before the Discipline Committee and received sanctions of a fifteen-day loss of commissary and kiosk privileges on August 27, 2021. In this record, "Dis. Segregation" is not marked as a sanction administered that day. The Record of Disciplinary Committee Sanctions is signed by Cpt. Adams and K. Watson. (ECF No. 67-2, p. 5). The subject matter of Plaintiff's infraction prompting the disciplinary sanctions is not included in this record. *Id.*

Sometime after he was transferred to West Delta on August 26, 2021 and before September 1, 2021, Plaintiff requested a bottom bunk from the officer working West Delta. (ECF No. 57-9, p. 2). Plaintiff claims he joked with the non-party deputy working the West Delta regarding a

3

reassignment to a bottom bunk. (ECF No. 1, pp. 5-6). According, to Defendant Adams, Plaintiff's request caused problems in West Delta, and it was decided it would be more appropriate for Plaintiff to be transferred back to protective custody in Max Delta. *Id*. On September 1, 2021, Plaintiff was moved to Max Delta. *Id*. From September 1, 2021 through October 5, 2021, while housed in Max Delta, Plaintiff sent and received approximately 47 emails or instant messages and made approximately 151 phone calls. (ECF No. 57-4).

Plaintiff submitted Grievance Number 9,770,385 on September 13, 2021. (ECF No. 57-3, p. 1). In his grievance Plaintiff stated:

> I feel not being able to use the kiosk for my video visits [and] being held in PC in the 'Disciplinary Segregation POD' while other inmates that are in PC are in population in West D. The deprivation of [privileges] is by law an unconstitutional punishment and a violation use this as a punishment according to the due process clause of the 4th Amendment. . . . A restriction to my visitation [privileges] can't be used as a safety concern.

*Id.* Admin G. Officer responded on September 15, 2021:

> The Disciplinary committee will review your request. WE will consider your request upon completion of that review. We will take into consideration the nature of your misconduct when determining whether a reduction is warranted.

*Id.* Sgt. D. Golden responded on September 18, 2021:

> A decision was made to place you in pc, max Delta along with another pc inmate. As far as video visits, I'll look into why they aren't working.

*Id.* Plaintiff then submitted an appeal on September 19, 2021:

> I committed no misconduct and was [placed] in [the] disciplinary pod because i [exercised] my first amendment right and asked a question. In all due [respect] sir the video visits can no way possible take place at the present kiosk as it does not have a handset sir.

*Id.* Plaintiff's Appeal was not responded to on this Grievance form. *Id.* Plaintiff also submitted Grievance Number 9,770,434 on September 13, 2021, stating:

> To state that the reason for me being in PC and placed in the Disciplinary Pod for safety can not be [true] because I have been in West D as the others inmates in PC are there now

4

and I have been punished [for] making a joke about moving bunks. . . . It is a violation of my civil rights and violation of both the 4th and 14th Amendments since I am a 'unconvicted citizen' being detained for pretrial. I only want to be treated fairly [and] visit my child. That shouldn't be to much.

*Id.* at 2.  Admin G. Officer made a note on September 15, 2019 on this grievance:

The Disciplinary committee will review your request. We will consider your request upon completion of that review. We will take into consideration the nature of your misconduct when determining whether a reduction is warranted.

*Id.*  Cpt. G. Adams responded to this grievance on September 17, 2021:

You couldn't [do] the simple things asked of you. I didn't have to go out of my way to try and find special arrangements for you…but I did…you ruined a good thing.

*Id.*  Plaintiff appealed this Grievance on September 17, 2021:

Sir I made a simple joke about moving down and you illegally punished me and [you] are still illegally and unconstitutionally punishing me. it's a shame i can not speak to my daughter or other children because nurse king got upset about a joke an now I am being punished for no reason. There was no misconduct in my actions.

*Id.*  Cpt. G. Adams responded to Plaintiff's appeal on this grievance on September 22, 2021:

You messed up the housing situation. So for your safety the whole reason all of this was done. You messed up that housing location so you went back to pc. you can claim it was a joke if you want but it wasn't.

*Id.*  Plaintiff filed a third grievance, number 9,788,560 on September 15, 2021:

There was no disciplinary action taken and I did not go to a disciplinary trial nor receive a write up. Therefore I have been unconstitutionally punished for 21 days. I was also denied the due process procedure if this was a disciplinary and that is a violation of my 4th amendment right. This can not be considered a disciplinary sentence because I can not be punished according to law, the Arkansas Jail Standards, and the Constitution both U.S. and Arkansas. Im merely wanting to visit my child.

*Id.* at 3.  Cpt. G. Adams responded on September 22, 2021:

You are not on disciplinary you are on pc if you are having troubles getting something accomplished submit a request to a shift and they will assist you.

*Id.*  Plaintiff submitted an appeal on September 23, 2021:

>You are causing me a deprivation of rights that other PC inmates are enjoying sir. That is illegal and [a]gainst the law.

*Id.* Cpt. G. Adams responded to Plaintiff's submitted appeal on September 30, 2021:

>I gave you a way to inquire about getting help. What is it you are trying to do that other PC inmates are able to?

*Id.* Plaintiff's final grievance, number 9,788,577 was also filed on September 15, 2021:

>The statements [m]ade that the disciplinary committee has to [review] this is proof I am being both unconstitutionally and illegally punished. I am merely wanting to visit my children and I can only explain to my family because of direct violations of my rights and the illegal punishment invoked by this jail staff I can not. Please simply return me to WEST D is all I am requesting.

*Id.* at 4. ADMIN G. OFFICER entered a Note in response to Plaintiff's grievance on September 20, 2021:

>The Disciplinary committee will review your request. We will consider your request upon completion of that review. We will take into consideration the nature of your misconduct when determining whether a reduction is warranted.

*Id.* Cpt. G. Adams responded on September 22, 2021:

>Housing note says PC it says pc cause that's what it is. The committee has nothing to do with it.

*Id.* Plaintiff appealed on September 24, 2021:

>The response from grievance officer used the term disciplinary committee. i also have requested to be off of PC numerous times. I am not aware of any rule where I am not allowed to ask to be off PC. Also how can it be for my safety when I am mixed with general population inmates daily, and not treated as a PC inmate. The deprivation of rights is ALL I am requesting to be stopped and I have been placed in a disciplinary pod for 30 days unconstitutionally punished withouyt (sic) the procedural due process protected by my 14th amendment sir. I am speaking to you in all due respect and humbley (sic) man to man. Whats happening to me is wrong sir. My children cant see m[e] because of the cruel and unusual punishment being invoked sir. ALL I want is a fair shake and the order of guidelines and procedures were never explained to me via rules. The 12 page handbook is out of date by 4 years and Im still maintain my respet (sic) for your position as Captain of the jail. Im asking you for a chance sir. I feel everyone deserves a second chance especiall (sic) when they take accountability for their actions and address the correct ac[t]ion. I assure you it wont be a mistake if you return me to West D sir.

*Id.* Cpt. G. Adams responded on September 30, 2021:

6

> Not once have you told me you wanted off PC all together. You hit the door wanting PC. I will take your request at going back to WD into consideration even though it's a grievance is which it was submitted.

*Id.* Plaintiff was transferred out of Max Delta on October 5, 2021 back to West Delta. (ECF No. 57-2, p. 3).

## II. PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on October 14, 2021. (ECF No. 1). Defendant Steve King Answered on December 8, 2021 (ECF No. 17). In his Complaint, Plaintiff asserts three claims, against Defendant King.[3]

First, Plaintiff claims Defendant King punished him unconstitutionally, and deprived him of privileges by placing him in maximum security disciplinary segregation on August 25, 2021 without a disciplinary hearing. Plaintiff claims these actions denied him his due process. (ECF No. 1, pp. 5-6). Plaintiff specifically claims:

> Placed in a maximum security disciplinary segregation pod/cell on August 25, 2021 at 11:50 a.m. by jail nurse Steve King, for asking in a joking manner via a guard if I could move to a bottom bunk. Immediately I was unconstitutionally punished. Deprived of visitation via video kiosk with family members. Told by Nurse King, Captain Adams, Grivenence (sic) Officer Watson my aking (sic) a question was misconduct. Was given no disciplinary hearing, d, denied due process, and locked down in A 23/1 lockdown, placed on PC by Srgt. Henderson. Filed numerous request and grievances and still denied being returned to West D Pod with PC inmates housed with other general population inmates. I have suffered severe mental and emotional harm not limited stress, heartache, chest pains, anxiety, physical pain and suffering.

(ECF No.1, pp. 5-6). Plaintiff alleges Claim One against Defendant King in both his individual and official capacities. He states:

> The detainee handbook is 12 pages and 4 years outdated. The violations of Arkansas Jail Standards Section 15.1005 and A.C.A. Section 12-26-104 no general knowledge or respect for inmates 4th and 14th Amendment rights.

*Id.*

---

[3] Plaintiff asserted five claims in total in his Complaint with Claims Two and Five being asserted against County Defendants only.

For his Claim Three, Plaintiff alleges Defendant King violated his First Amendment right to free speech by retaliating against him when Plaintiff says he jokingly requested a bottom bunk. Specifically, Plaintiff claims:

> On 8/24/2021 I requested in a joking manner verbally to correctional officer Dockery 'if I could move to a bottom bunk.' C.O. Dockery spoke with Nurse King and shortly after Nurse King returned to Pod West D and verbally beratted (sic) and belittled me for 'asking to move down.' He then returned to verbally discipline me stating 'I had no right to ask that question.' Nurse King then stated I would be moving back to lockdown because of exercising my freedom of speech. Captain Adams backed his choice to violate my First Amendment right and moved me to disciplinary pod on 8/25/2021.

*Id.* at 8-9. Plaintiff asserts Claim Three against Defendant Adams in his individual capacity only. *Id.*

Plaintiff's Claim Four asserts Defendant King violated his equal protection rights under the Fourteenth Amendment and his right to be free from cruel and unusual punishment.:

> Warden Jeffie Walker has allowed Captain Adams, and Nurse King the opportunity to punish me in cruel and unusual was. Both Adams and King are fully aware the kiosk in Disciplinary Pod Max D is not set up for video visitation as all other pods are. Also the lockdown pod Max D is 23 hour lockdown and 1 hour recreation everyday. Tjus (sic) making access to communications to attorneys, family members, and bondsman very limited. Also the access to a law library and medical requests or grievance filing via kiosk as well. Privileges deprived from this 23/1 lockdown situation is causing cruel and unusual punishment.

(ECF No. 1, p. 11). Plaintiff asserts Claim Four against Defendant King in his individual capacity only. *Id.*

For relief Plaintiff requests compensatory damages in the amount of $250,000.00 for the "extreme physical, emotional, and emotional trauma caused by the direct actions of the named defendants." *Id.* at p. 13.

On August 9. 2022, Defendant King filed his Motion for Summary Judgment (ECF No. 59), his Statement of Undisputed Facts (ECF No. 61), and his Memorandum Brief in Support of Motion for Summary Judgment (ECF No. 60). In his Brief, Defendant King argues (1) Plaintiff did not suffer a constitutional violation or deprivation of his civil rights; (2) Defendant King had

no authority over housing assignments in the MCDC; and (3) Defendant King is not liable to Plaintiff in his official capacity. (ECF No. 60).

Plaintiff filed his Response and Brief in Support on September 23, 2022 arguing Defendant King's actions did violate his constitutional rights, and the material facts are in dispute. (ECF No. 66; 66-1). Plaintiff also submitted an attachment to his Response with an enumerated list of Defendant King's facts he disputes. (ECF No. 66-2). Specifically, Plaintiff disputes Defendant King's Undisputed Facts Numbers 2, 6, and 7:

Number 2: Plaintiff did not request to be put into protective custody and his Arrest-Booking Detail Page is marked "N" in the protective custody column. (ECF No. 59-2, p. 1).

Number 6: "Per inmate kiosk request - #9,634,159 from housing area 'MAX-E' on 8/25/2021 Sgt. Henderson's Response is 'Nope you on disp' referring to being disciplined." (ECF No. 66-2, pp. 1, 4).

Number 7: "Per, Officer Roberts, report dated 8/17/2021 Nurse Steven King in fact notified Plaintiff 'a disciplinary could result in loss of an inmate's PC status.' Therefore, showing Steven King can exhibit control or authority over housing assignments. Exhibit 1A." (ECF No. 66-2, p. 2-3).

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right,

privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

### IV.  DISCUSSION

As an initial matter, the Court notes Defendant King did not move for summary judgment on all of Plaintiff's specific claims asserted against him.  Instead he argued three general arguments: (1) Plaintiff Claims One and Two failed to state claims because Plaintiff's due process rights were not violated; (2) Defendant King has no authority over housing assignments, and therefore, all of Plaintiff's claims against Defendant King must fail, and (3) Plaintiff has failed to state an official capacity claim against Defendant King because he has not pointed to any policy or custom of Defendant King's employer, SHP that violated Plaintiff's constitutional rights.  The Court will begin with Defendant King's argument Two, as it is dispositive of all claims asserted against Defendant King.

### A.  Defendant King has no authority over housing in the MCDC

Defendant King argues the summary judgment evidence shows that he had no authority to assign Plaintiff to any particular housing unit, and therefore, all of Plaintiff's claims against him must fail.  In support of this argument, Defendant King submits his own sworn affidavit stating:

> Defendant Adams had [Plaintiff] removed from [West Delta] and placed back on protective custody . . . As a nurse at [MCDC], I had no authority or control over housing assignments. I, therefore, had no authority to move [Plaintiff] from [West Delta] back to protective custody.  I did not request or recommend that [Plaintiff] be moved from [West Delta] back to protective custody.

(ECF No. 59-1, pp. 1-2).  Plaintiff responded arguing that Defendant King does influence housing assignments.  In support of his argument and in an effort to dispute Defendant King's affidavit,

Plaintiff produced a note dated August 17, 2012 made by nonparty Officer Roberts. This notes states:

> I, Officer Roberts, on 8/17/21 at 640 am was in Max Echo conducting pill pass with Nurse King. When we approached Max Echo 013, his lights we covered so King asked me to open his door so he could observer him take his medication. He told him he needed to remove the light coverings, which we have told him multiple times, he still refused and began mouthing off and being disrespectful. King notified him that a disciplinary could result in the loss of his PC status to which he said "No it won't" and continued to back talk and be disrespectful even after we closed the door and walked away. I left with no further incident and returned to my normal duties.

(ECF No. 66-2, p. 3).

To prove a cognizable claim against the Defendant King, Plaintiff must establish that he "personally violated [his] constitutional rights." *Jackson v. Nixon,* 747 F.3d 537, 543 (8th Cir. 2014). Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). While the August 17, 2021 note by Officer Roberts does show that Defendant King threatens inmates with loss of privileges, it does not provide evidence Defendant King has the authority or ability to implement or alter inmates' housing assignments. Further, as illustrated by the extensive summary judgment evidence enumerated herein, Plaintiff has not pointed to any evidence on the record that Defendant King caused or even suggested his transfer out of West Delta to Max Delta. As this transfer is the basis of all of Plaintiff claims against Defendant King, all of Plaintiff's claims against Defendant King fail as a matter of law. [4] *See Mayorga*, 442 F.3d at 1132.

Plaintiff does make one additional argument against Defendant King for "verbal discipline," berating, and belittling. (ECF No. 1, 8-9). It is well established that "Verbal threats

---

[4] The Court notes, as explained in detail in its Report and Recommendation on County Defendants' Motion for Summary Judgment, while there are no genuine issues of material facts related to any claims made against Defendant King, Plaintiff has pointed to genuine issues of material fact related to his due process claims as asserted against the County Defendants. (ECF No. 68).

do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail official did not rise to the level of a constitutional violation). Accordingly, the alleged actions of Defendant King in verbally disciplining and verbally abusing Plaintiff also fails to state a cognizable claim.

### B. Defendant King Contends he is not Liable to Plaintiff in his Official Capacity

Secondly, as Plaintiff has failed to establish genuine issue of material facts regarding Defendant King's alleged constitutional violations against him, he cannot maintain an official capacity claim against Defendant King's employer SHP. Without a constitutional violation by the individual employee, there can be no official capacity claim against the employer. *Morris v. Cradduck,* 954 F.3d 1055, 1060 (8th Cir. 2020) *Sanders v. City of Minneapolis, Minn.,* 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)).

### V. CONCLUSION

For the reasons stated above, I recommend Defendant Steve King's Motion for Summary Judgment (ECF No. 59) be **GRANTED** and the individual and official capacity claims against him be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 1st day of February 2023.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE